UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES NOLON BUSH,

Defendant.

CASE NO. CR06-5504 BHS

ORDER GRANTING DEFENDANT COMPASSIONATE RELEASE

This matter comes before the Court on Defendant Charles Bush's motion for compassionate release. Dkt. 138. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. FACTUAL & PROCEDURAL BACKGROUND

Bush moved for compassionate release on September 16, 2020, Dkt. 138, arguing that he is entitled to compassionate release because the COVID-19 pandemic presents an extraordinary and compelling reason or, in the alternative, because he is experiencing "a serious deterioration in physical or mental health because of the aging process," U.S.S.G. § 1B1.13, Application Note 1(b). The Court denied Bush's motion on the grounds of

ORDER - 1

COVID-19 as Bush tested positive for COVID-19 in May 2020 but requested supplemental briefing on the issue of Application Note 1(b) and whether Bush is experiencing a serious deterioration because of the aging process, warranting compassionate release. Dkt. 156.

On November 9, 2020, Bush filed his supplemental briefing, Dkt. 157, and on November 16, 2020, he filed the declaration of Dr. Laurel Coleman, an expert physician who provided a medical evaluation of Bush, Dkt. 158. On November 16, 2020, the Government responded. Dkt. 159. On November 18, 2020, Bush replied. Dkt. 160.

## II.   DISCUSSION

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended § 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the Bureau of Prison's ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> \*\*\*
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13.

## A.  Extraordinary and Compelling Reasons

The First Step Act allows for the finding for extraordinary and compelling reasons warranting compassionate release if a defendant presents evidence that, *inter alia*, the defendant is at least 65 years old, is experiencing a serious deterioration in health due to the aging process, and has served at least 10 years or 75% of his or her term of imprisonment, whichever is less. *See* U.S.S.G. §1B1.13, Application Note 1. Here, Bush easily satisfies two of Application Note 1(b)'s requirements: he is 81 years old and has served at least 10 years of his sentence. Whether Bush has an extraordinary and compelling reason to warrant compassionate release ultimately hinges on if he is experiencing serious deterioration in his health because of the aging process.

Whether Bush is experiencing such deterioration due to his age is "a fact-intensive analysis[,]" but Bush "need not have lost all ability to provide self-care or be suffering from a terminal illness to qualify for relief[.]" *United States v. Ebbers*, 432 F. Supp. 3d

421, 428 (S.D.N.Y. Jan. 8, 2020). Application Note 1(b) "applies to senior-citizen defendants who have already spent over ten years in prison and whose physical and cognitive deterioration has impaired basic human functions without regard to whether their conditions, other than aging, are terminal." *Id.* at 428. In cases where the court has found serious deterioration in health because of the aging process, the defendant had documented, serious medical conditions that were uncontrolled and diminished the defendant's ability to provide self-care. *See, e.g.*, *id.* at 431–32 (granting relief for 78-year-old who was experiencing a rapid decline in his health due to aging); *United Sates v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *3 (D. Min. July 25, 2019) (granting compassionate release to 71-year-old wheelchair-bound defendant who had heart problems, and suffered from diabetic kidney disease, among other conditions); *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019) (granting compassionate release to 81-year-old suffering from severe heart disease); *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *1–2 (S.D. Ind. May 9, 2019) (granting compassionate release to 72-year-old inmate with limited mobility, diabetes, kidney disease, Hepatitis C, and other issues).

When a court finds extraordinary and compelling reasons pursuant to Application Note 1(b), the defendant's medical conditions range from the most severe to those that are "chronic." *Compare Ebbers*, 432 F. Supp. 3d at 432 (finding the defendant's "ability to care for himself [] nearly gone, his cognitive functions [] impaired, and his body [] wasting away.") *with United States v. Young*, 458 F. Supp. 3d. 838, 848 (M.D. Tenn. March 4, 2020) (concluding that the defendant's "physical health, although perhaps not

seriously deteriorating, is nonetheless declining due to chronic illnesses and the aging process."). And some courts have considered whether the defendant's medical conditions demonstrate "a *substantially* diminished ability to provide self-care." *McGraw*, 2019 WL 2059488, at *4 (emphasis added); *see also Ebbers*, 432 F. Supp. 3d at 428 and n.7 ("A defendant's ability to provide self-care in prison is, nevertheless, one factor a court may consider, just not a required factor.").

Bush's medical records reflect that he is currently suffering from uncontrolled hypertension and stage 3 kidney disease, *see* Sealed Dkt. 139; moreover, Bush provides evidence of macular degeneration. He argues that each of these health conditions is a product of the aging process and, when viewed collectively, that the conditions present a serious deterioration of his health. Bush also provides the declaration of Dr. Coleman to support his argument that he is suffering from serious deterioration. *See* Dkt. 158. Dr. Coleman is an internist, geriatrician, and palliative care physician who reviewed Bush's BOP medical records and a transcript of a phone call with Bush and his attorney related to specific questions about his current functional status to prepare her declaration. *Id.*, Exhibit B, Medical Evaluation for Charles Nolan Bush. Dr. Coleman identified six active medical problems for Bush: chronic kidney disease, hypertension, coronary artery disease, prostate enlargement, dental concerns, and chronic obtrusive lung disease.[1] Dr. Coleman also identified that Bush reports increasing pain, which has limited his ability to

---

[1] Dr. Coleman also identifies Bush's previous COVID-19 infection as a current medical condition, but for the reasons stated in the underlying order, the Court will not consider whether Bush's previous COVID-19 infection contributes to his deterioration.

ORDER - 5

move freely, has had trouble finding foods to eat due to his lack of teeth, and reports declining short-term and long-term memory. Dr. Coleman concluded that "While there is not 'one' condition that specifically impacts his prognosis or likelihood of death in the next six months, they <u>all combine</u> to increase his need to intermittent hospitalization, and more support care for his function decline." *Id.* at 11 (emphasis in original).

The parties agree that Bush's medical records reflect that Bush has uncontrolled high blood pressure, stage 3 kidney disease, early onset macular degeneration, and periodontal disease, but the Government argues that these conditions are "ordinary geriatric ailments" and do not currently rise to the level of deterioration contemplated by Application Note 1(b). *See* Dkt. 159 at 4. In cases where a court has found a defendant to have "ordinary geriatric ailments" and not extraordinary and compelling reasons, the defendant had common, non-life-threatening ailments, such as using a cane or having back pain or vision problems. *See, e.g.*, *United States v. Brown*, No. 1:04-cr-00006, 2020 WL 3035916, at *3 (M.D. Tenn. June 4, 2020) (finding "ordinary geriatric ailments" for 67-year-old who sometimes required a cane to walk and had single eye blindness); *United States v. Estrella*, No. 2:15-cr-00032-GZS, 2019 WL 6689897, at *1 (D. Me. Dec. 6, 2019) (denying relief to 69-year-old with limited mobility who required the use of a cane); *United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463, at *1, *3 (E.D. Wash. June 11, 2019) (65-year-old defendant legally blind in one eye did not qualify as having age-based deterioration). But in *Brown*, for example, the court did not consider the defendant's other, serious medical conditions, such as cutaneous T-cell lymphoma and high blood pressure, when examining whether there were extraordinary and

compelling reasons because the defendant's conditions were being successfully treated or well controlled with medication. 2020 WL 3035916, at *3.

The Court agrees with Bush that his health, when considering all of his medical conditions, is in serious decline because of the aging process. Though Bush's health has not declined so much that he must be admitted to end-of-life care as in *Ebbers*, a defendant does not need to be terminal to establish extraordinary and compelling reasons. The age-related degradation must be serious, and Bush has established that his health deterioration is serious. His hypertension is uncontrolled, his kidney function is in serious decline, and he only has six teeth. Indeed, the Southern District of Texas found that a 71-year-old defendant who had very similar medical conditions—chronic viral hepatitis C, an enlarged prostate, and stage 3 chronic kidney disease—met the age-related definition of extraordinary and compelling reasons. *United States v. Reece*, Cr. No. H-94-103-8, 2020 WL 1659854, at *1 (S.D. Tex. March 27, 2020). Bush has met his burden in establishing that he is experiencing a serious deterioration in health due to the aging process, and the Court thus finds that he has extraordinary and compelling circumstances to warrant compassionate release.

**B.  Public Safety**

Once a defendant has established that extraordinary and compelling reasons exist to warrant release or a reduction in sentence, the defendant must also show that they no longer present a danger to the safety of any other person or to the community. USSG § 1B1.13(2). In making this determination, the Court looks to the nature and circumstances of Bush's underlying offense, the weight of evidence against him, his

history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. *See* 18 U.SC. § 3142(g).

Bush argues that he does not pose a danger to the community, pointing to the fact that he has had no infractions while in BOP custody. The Government concedes that, given Bush's "age . . . , lack of prior criminal history, and the prison term he has served to date, it seems unlikely that, if released, Bush would again orchestrate a large-scale Ponzi scheme." Sealed Dkt. 146 at 19. The Government does note that there is still a likelihood that Bush could again inflict financial harm on those with whom he comes into contact. But Bush's behavior while in BOP custody has been exemplary, and the United States Probation Office concluded that Bush's currently release plan minimizes any specific risk of danger. The Court thus agrees that Bush does not pose a danger to the safety of any other person or to the community.

**C.    18 U.S.C. § 3553(a) Factors**

"Having found that that [the defendant's] age and health constitute extraordinary and compelling reasons warranting compassionate release and that he poses no danger to others or to the community, the Court must now consider the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Cosgrove*, CR15-230-RSM, 2020 WL 1875509, at *4 (W.D. Wash. Apr. 15, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13). The relevant factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further

crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (iv) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The Court applies the § 3553(a) factors in considering a defendant's sentence, and the Court's consideration of these factors has changed little since Bush's sentencing. Indeed, the majority of factors weigh against compassionate release. For example, Bush's underlying crime was extremely serious and financially harmed many victims. On the other hand, the Court finds that the factor relating to the "need for just punishment" has dramatically shifted since sentencing. The lock-down measures that prisons across the country like Federal Correction Institution Lompoc, where Bush is currently housed, have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing. All visitations have been suspended at FCI Lompoc,[2] and BOP programs have stopped, except for those required by law.[3] This factor has much greater weight when balancing it with the other factors. After considering all the factors, the Court concludes that Bush has established an entitlement

---

[2] Federal Bureau of Prisons, *FCI Lompoc*, https://www.bop.gov/locations/institutions/lof/ (last visited Dec. 18, 2020).

[3] Federal Bureau of Prisons, *BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

to warrant a reduction of his sentence from imprisonment at FCI Lompoc. Under 18 U.S.C. 3582(c)(1)(A), if the Court determines that a reduction in sentence is appropriate, the Court may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." Pursuant to this authority, the Court reduces the Defendant's term of imprisonment to time served.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Bush's motion for compassionate release, Dkt. 138, is **GRANTED** as follows:

1) Bush's term of imprisonment imposed is reduced to time served, and the remaining unserved portion of Bush's term shall be served on supervised release, *see* 18 U.S.C. § 3582(c)(1)(A), followed by the previously imposed three-year period of supervised release;

2) Bush shall be released from the custody of the BOP fourteen days after the entry of this Order to his approved release address in the Western District of North Carolina;

3) Bush shall comply with all the other terms and conditions of supervised release set out in the original sentence and judgment dated March 20, 2009, Dkt. 98; and

/

/

4) Bush shall contact the United States Probation Office in Seattle and/or the Western District of North Carolina within 24 hours of his release and follow its instructions.

Dated this 14th day of January, 2021.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge